580 A.2d 1

BEECHWOOD COMMONS CONDOMINIUM ASSOCIATION

v.

BEECHWOOD COMMONS ASSOCIATES, LTD, Oreland Home Builders, Robert L. Wexler

v.

Irving SHAPIRO.

Leonard J. DAVIS, Peter R. Davis and Robert Wexler, t/a Beechwood Commons Associates, Ltd.

v.

Irving SHAPIRO.

Appeal of BEECHWOOD COMMONS ASSOCIATES, LTD. and Leonard J. Davis, Peter R. Davis and Robert Wexler t/a Beechwood Commons Associates, Ltd.

Superior Court of Pennsylvania.

Argued April 19, 1990.

Filed Aug. 1, 1990.

218

220

William C. McGovern, Philadelphia, for appellants.

Edward A. Greenberg, Philadelphia, for Beechwood, appellee.

Elizabeth M. McKenna, Philadelphia, for Irving Shapiro, appellee.

Before CAVANAUGH, ROWLEY and HUDOCK, JJ.

CAVANAUGH, Judge:

Beechwood Commons Associates, Ltd. and Leonard Davis (now deceased), Peter Davis, and Robert Wexler, the general partners of Beechwood Commons Associates (hereinafter referred to as "Beechwood" or "developer") take this appeal from a judgment entered against them in the Court of Common Pleas of Philadelphia County following a jury

verdict and denial of post-trial motions. The jury awarded damages to appellee Beechwood Commons Condominium Association (hereinafter referred to as "Association," "Council," or "condominium association"), which represents owners of condominiums developed and built by Beechwood and its general contractor, Oreland Home Builders (later renamed Robert Wexler Construction Company and referred to as "builder"). Beechwood's partner, Robert Wexler, was Oreland's/Wexler's principal. The jury also returned a verdict of non-liability with respect to the project's architect, Irving Shapiro, whom Beechwood had joined as a third-party defendant. This judgment represents consolidation of two actions brought by the condominium association against Beechwood; the first was docketed as April Term, 1982, No. 1782, the second as September Term, 1983, No. 3909. After a careful review of the record and the applicable law, we affirm.

Beechwood Commons is a condominium complex located at 21st and Arch Streets in Philadelphia. In 1980, Beechwood Commons Associates, Ltd. [Beechwood] began selling the various condominium units of Beechwood Commons. Each unit was sold pursuant to a form agreement of sale drafted and provided by Beechwood. During trial, those agreements of sale were referred to as the 1980 agreements. One specimen agreement was admitted and defendant-appellant Beechwood agreed that it was identical in all significant respects to the agreements of sale for all of the other condo units. The 1980 agreements contained an express warranty that the premises would be free from defective and non-conforming work for a period of one year and an express warranty that the premises would be constructed in accordance with the architect's plans and specifications.

Shortly after purchase, problems with construction defects arose. Residents' automobiles were sustaining paint damage caused by water passing through the brick, mortar, and concrete slab carport roofs. The architect, Mr. Shapiro, advised that the dripping water was leaching salts as it

passed through the carport deck. Other minor construction problems were resolved and are not the subject of this lawsuit.

The essence of the carport roofing leak was a variance between the design submitted by the architect, Mr. Shapiro, as approved by Beechwood, and the design utilized by Mr. Wexler and his company in construction of the carport decks. Mr. Wexler testified that, in order to cut costs, he decided to omit a waterproof membrane which was part of the architect's plans. Mr. Shapiro strenuously voiced his objections to Mr. Wexler, the partner with whom the Beechwood partnership, through its contract with Mr. Shapiro, had directed Mr. Shapiro to communicate. So strong were Mr. Shapiro's objections to omitting the membrane from the design that he refused to alter his drawings to account for the new design.

After numerous meetings and contacts concerning the leaking carport roofs and other problems, the developer and the builder entered into a settlement agreement with the condominium association in October, 1982, several months after the association had filed suit against Beechwood and Oreland/Wexler. This agreement, referred to as the 1982 agreement or accord, stipulated that the developer and the builder would repair several problems, the most important of which were the leaking carport roof decks. The 1982 agreement released the developer and the builder from claims arising in the future, excluding claims relating to: structural soundness (not here at issue); any and all implied warranties arising out of construction of the condominium property; and any claims which individual unit owners had or may have had arising out of the construction of their individual units which were not the subject matter of the agreement. By its terms, the release was also inapplicable to the specific undertakings and obligations of appellant under the agreement until such time as the undertakings were met as set forth.

The 1982 agreement also contained the following provision:

In the event that Beechwood, Wexler Construction, or Wexler fail to perform their undertakings enumerated in Sections 1 and 2 above [relating to the repairs which Beechwood and Wexler Construction undertook to complete], and Council obtains a final money judgment against them, or any of them ... Beechwood, Wexler Construction, and Wexler shall pay to Council the attorneys [sic] fees incurred by it in connection with obtaining such judgment. In the event Council fails to obtain said judgment after commencing an action, Council will pay to Beechwood, Wexler Construction and Wexler the attorney's fees incurred by them in connection with defending any such action.

The developer and the builder performed some of the work required under the 1982 agreement, but they failed to correct the leaking carport roofs. In November of 1985, the condominium association filed a four-count complaint alleging breach of the express warranties contained in the 1980 agreements, breach of implied warranties, breach of the 1982 agreement and misrepresentation. Consolidation occurred shortly thereafter.

At trial, the condo association offered evidence that Beechwood breached the 1980 agreements insofar as the premises were not constructed in accordance with the architect's plans and specifications and were not free of defective workmanship for a one-year period. The association also offered evidence that Beechwood breached the implied warranties that the premises would be fit for their intended uses and would be constructed in a reasonably good and workmanlike manner.

The latter implied warranties contained in the 1980 agreements were specifically preserved by the 1982 agreement. The former express warranties—at least as they related to the carport roofs and other problems addressed in the 1982 agreement—were preserved by language in the 1982 release which said that the release would not apply to the specific undertakings and obligations of Beechwood under the 1982 agreement until such time as those undertakings

were completed. The association's evidence consisted in part of testimony by Robert Wexler that he omitted the waterproof membrane called for by the architect's plans and over the architect's objections.

The condo association also offered evidence that Beechwood breached the 1982 agreement insofar as it failed to correct the problem of the leaking carport roofs. On the issue of damages, the association offered evidence that the cost of repair would be approximately $187,000.

Witnesses for Beechwood testified that Robert Wexler did not inform his partners, the Davises, that he was omitting the waterproof membrane, that the architect knew Mr. Wexler was omitting the membrane and took no corrective action, that members of the condominium association obstructed Beechwood's efforts to perform under the 1982 agreement, and that the claimed damages were somewhat overstated.

At the close of evidence the trial judge bifurcated the jury instructions and deliberations. In the first phase, the jury was instructed to determine whether the 1982 agreement had the elements of an accord, that is, whether the agreement was based upon an honest dispute and was designed to supersede the 1980 agreements of sale. The jury was instructed to determine which agreement(s) governed and whether the governing agreement was breached.

After the jury's verdict finding that the 1980 agreements governed and were breached, the court reconsidered its instructions—to which appellee had taken an exception—which told the jury that either but not both types of agreements (the agreements of sale as against the accord) governed relations between the parties. In the second part of jury deliberations, the court instructed the jury to determine whether the 1982 agreement was also breached and to render an award of damages on its findings of liability. The jury found a breach of the 1982 agreement. The jury found compensable damages of $150,000 and judgment was entered on the verdict.

After trial, plaintiff moved for and was awarded attorney's fees pursuant to the 1982 agreement. Motions for judgment notwithstanding the verdict and a new trial were denied. An appeal was timely filed. However, appellant's brief was not timely nor did appellant designate the contents of the reproduced record. We choose to decide the case on the merits; appellant's brief was only two days late and appellee will suffer no prejudice from appellant's failure to designate contents of the reproduced record since this court will rely on the original record.

First, Beechwood asks us to find that the trial court erred in not ruling as a matter of law that the settlement agreement of October 25, 1982 was an accord and satisfaction which extinguished the earlier (1980) agreements of sale. Appellee Association asks us to find that the trial court erred in not ruling as a matter of law that the settlement did *not* satisfy the requirements for accord and satisfaction; appellee then argues that in light of the jury's verdict, the trial court's error was harmless and we should therefore affirm.

Appellant had raised accord and satisfaction as a defense to appellee's action for breach of warranties in the 1980 agreements. In order to establish accord and satisfaction, the party asserting the defense has the burden of proving the existence of a bona fide dispute concerning the parties' obligations under the first agreement, which dispute is the basis for consideration for the making of the second agreement. *Duryea v. Long*, 191 Pa.Super. 511, 159 A.2d 259 (1960). Beechwood has focused on demonstrating the existence of a bona fide dispute giving rise to consideration to persuade this court that the 1982 agreement was an accord and satisfaction of its prior obligations.

Nevertheless, the existence of bona fides is not dispositive in this case. Assuming the existence of a bona fide dispute giving rise to consideration, the language of the 1982 agreement reflects no attempt by the parties to deem the 1980 agreements satisfied by the Beechwood's *promise*

in the 1982 accord to make the necessary repairs. Rather, the 1982 agreement plainly states that appellant would be released from its related obligations under the 1980 agreements only upon completed *performance* of its present undertakings to repair the roofs and other items.[1]

In *Nowicki Construction Co. v. Panar Corp.*, 342 Pa.Super. 8, 492 A.2d 36 (1985), our court delineated the distinction between an accord and satisfaction and a substituted contract, in which the parties do not intend to require performance in satisfaction for an obligation under the first agreement. "A substituted contract is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise in satisfaction of a previously existing claim[,] while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction." *Nowicki*, 492 A.2d at 40 (quoting other cases). The party asserting a substituted contract has the burden of proving that the parties intended to discharge the earlier contract. *Id.* As we have already noted in footnote one, the jury did not believe that the parties intended the 1982 accord to be a substituted contract nor do we think that there was evidence in the case to support that result. The 1982 agreement is therefore properly classified as an accord exec-

---

1. Appellant relies on a release given by the Association in section 6.1 of the 1982 agreement to prove accord and satisfaction of the 1980 agreements. Section 6.2 of the 1982 agreement states that the release given "shall not apply to the specific undertakings and obligations of Beechwood, Wexler, Wexler Construction [and others] under this [1982] Agreement until such time as such undertakings are met as set forth herein." Plainly, the parties intended not to release Beechwood from warranties made in its agreement of sale until performance was complete.

This conclusion is, moreover, perfectly consistent with the jury's findings. The jury, in finding that the 1980 agreements were still valid, necessarily felt that the parties did not intend for the 1982 accord to extinguish the 1980 agreements. Had the jury believed that the promise to repair, rather than the actual performance of repairs, was sufficient to satisfy the promisor's duties under the 1980 agreements, it would have determined that the 1982 accord governed the case during its first round of deliberations.

utory.[2]

■ Unlike a substituted contract—which is accepted as satisfaction of a pre-existing duty and bars revival of the pre-existing duty following a breach of the substituted contract—an accord executory does not itself operate as a discharge of the previous claim. *Nowicki; Duryea v. Long,* 191 Pa.Super. 511, 159 A.2d 259 (1960). Consequently, appellee was entitled to prove breach of the first agreements and the trial court acted properly in eventually letting the jury decide whether either or both types of agreements were breached.

■ Although it would have been preferable to have sent all of the liability issues to the jury at one time, we perceive no prejudice to appellant in the trial court's subsequent amendment to correct its instructions. A motion for a new trial based upon the sufficiency of the jury charge will only be granted when the court determines that the charge in its entirety and against the background of the evidence was erroneous and might have prejudiced appellant. *Sweitzer v. Dempster Systems,* 372 Pa.Super. 449, 539 A.2d 880 (1988).

The trial court's amendment of its instructions placed all of the proper questions before the jury and the charge was not erroneous. If anything, the trial court's initial error in requiring the jury to find that only one agreement or type of agreement applied to the dispute was favorable to Beechwood since it gave the jury the impression that Beechwood's liability was more limited than it might in fact have been.

■ Second, appellant seeks to vacate the lower court's award of attorneys' fees under the 1982 agreement, which makes specific allowance for such an award to the winning party in any litigation regarding the undertakings made by the parties in the 1982 agreement. Beechwood argues that

**2.** It would be incorrect to call the 1982 agreement an accord and satisfaction since Beechwood breached the 1982 agreement, thereby failing to satisfy the terms of the 1980 agreement.

if we decide, as we have, that a claim could be brought under warranties in the 1980 agreements, then there was no consideration for the 1982 accord and therefore appellee cannot collect attorneys' fees thereunder.

This argument makes the same erroneous assumption as Beechwood's first argument, namely, that the 1982 agreement either qualifies as an accord and satisfaction or is not an enforceable contract. We have found that the 1982 agreement was an accord executory which the jury determined that Beechwood breached, thereby failing to satisfy its obligations under the first agreement as well.

■ When an accord executory is breached by the obligor's failure to perform, the law gives the obligee the choice of enforcing the original duty or any duty arising under the breached accord. *Nowicki*, 492 A.2d at 40. The obligee may plead in the alternative under Pennsylvania Rule of Civil Procedure 1020(c) and the obligee need not elect prior to verdict. *See, Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 375 A.2d 1285 (1977).

The thrust of appellant's second argument is *not* that appellee was permitted to recover duplicative damages.[3] Rather Beechwood is contending that the second agreement must be deemed to have failed for lack of consideration because Beechwood did not receive its anticipated benefit of being released from claims arising under the 1980 agreements. The fallacy of Beechwood's argument is its presupposition that the 1982 accord was intended to release Beechwood from claims under the 1980 agreements merely because Beechwood *promised* to make the necessary repairs. As we have already demonstrated, appellant was to be

3. Such an argument would fail in any event since the damages awarded merely represented the cost of repairing the carport roofs properly. This amount reimburses the homeowners for what they expected—the benefit of their bargain—under either the 1980 agreement of sale or the 1982 settlement agreement. The 1982 agreement made attorneys' fees recoverable for the winner (which could have been either party) in the event that suit was brought upon it. Appellees are deemed to have elected to recover on the 1982 agreement, as they are permitted to do under *Nowicki.*

released from claims under the 1980 agreements only upon *performance* of its obligations under the 1982 accord.

The consideration appellant was to receive for its promises in the 1982 accord was appellee's promise of forbearance in bringing suit. In return for Beechwood's promise to repair the leaking decks, the condominium association gave Beechwood an opportunity to make the necessary repairs rather than be subject to further legal action. Beechwood did receive the benefit of its bargain, that is, it was given a reasonable opportunity to make the needed repairs during which time the condominium association refrained from taking further legal action. It was appellee, the condominium association, which did not receive the benefit of its bargain, namely properly waterproofed decks. This is not a failure of consideration inherent in the agreement; rather, it is the direct result of Beechwood's breach.

Beechwood also suggests that the jury, in determining that the 1980 agreements survived the 1982 accord, implicitly found that there was no bona fide dispute giving rise to the 1982 accord. As a result, according to Beechwood, the 1982 accord was not a valid contract. As we have already explained, the jury's verdicts are more consistent with a finding that there was a bona fide dispute giving rise to the 1982 accord, but that the parties intended that Beechwood be released from claims arising under the 1980 agreements only upon its completed performance of its obligations under the 1982 accord.

Thus, appellant has failed to demonstrate that the court's award of attorneys' fees pursuant to the unambiguous language of the parties' 1982 agreement was erroneous.

■ Third, Beechwood argues that the trial court erred in not instructing the jury that it could find the architect, Irving Shapiro, negligent in performing his supervisory duties under his contract by not notifying the other Beechwood partners that Mr. Wexler was ignoring the architect's plans with respect to carport deck waterproofing.

Beechwood does not argue that the court's instructions to the jury with regard to Beechwood's action for *breach of contract* against Mr. Shapiro were inadequate. It only argues that the court should have submitted the issue of Mr. Shapiro's *negligence* as well as his breach for the jury's consideration.

At the outset, we note that there is a question as to whether the court's instructions submitted the issue of Mr. Shapiro's negligence or not. Assuming for the moment that the negligence issue was not submitted, the jury's verdict on the breach of contract issue is conclusive upon the negligence issue as well.

Mr. Shapiro's entire duty towards Beechwood derived from his contract with the partnership. Beechwood offered no other basis for Mr. Shapiro's supposed negligence than his duties under the contract. In addition, the court instructed the jury that Mr. Shapiro had a duty to act reasonably in performing his contractual duties.

The jury found that Mr. Shapiro did not breach the contract. Therefore, we fail to see how the jury could possibly have found Mr. Shapiro negligent in performing under the contract, especially since the court did instruct the jury that Mr. Shapiro was obliged to act reasonably in fulfilling his obligations.[4]

Since the jury found that Mr. Shapiro had not breached any duty owed towards Beechwood and had acted reasonably, the availability of a different measure of damages for negligence than for breach of contract is irrelevant. Any error on the court's part in not explicitly submitting the issue of negligence to the jury was rendered harmless by the jury's finding that Mr. Shapiro had not breached his contract or acted unreasonably in fulfilling his obligations.

Judgment affirmed.

**4.** In its argument, Beechwood draws the distinction between nonfeasance (failure to perform) and misfeasance (failure to perform properly) and denotes the latter a negligence issue. We note that the court's charge explicitly submitted the misfeasance issue for the jury's consideration and therefore the charge was substantively correct.